**WO**                                                                                          SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Stoller, ) | No. CV 11-2454-PHX-GMS (JFM) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Bank of New York Mellon Trust Co., et al., ) | |
| Defendants. ) | |

On December 7, 2011, Plaintiff Christopher Stoller, who was then incarcerated in the Lake County Adult Corrections Facility, in Waukegan, Illinois, commenced this action *pro se* in the Central District of Illinois.[1] That Court transferred the case to this District based on venue. (Doc. 1, 2.) Subsequent filings submitted by Plaintiff reflected that he was subject to a guardianship and that he lacked the legal capacity to commence this case. The Court ordered Plaintiff to show cause why this action should not be dismissed on that basis. Counsel then appeared for Plaintiff and responded to the show cause order. As discussed below, the Court will dismiss the Complaint and this action and deny the pending motions.

Plaintiff submitted a copy of a February 2011 Order issued by the Illinois Circuit Court for the Nineteenth Judicial Circuit (Illinois Probate Court) appointing the Illinois Office of the State Guardian as plenary guardian over Plaintiff's estate and person, case# 09

---

[1] Plaintiff is now incarcerated in the Dixon Correctional Center in Dixon, Illinois.

P 957.[2] (Doc. 10, ex. 1.) Plaintiff's brother, Leo Stoller (Leo), sought the guardianship. (Id.) The Illinois Probate Court determined that Plaintiff was "totally without understanding or capacity to make and communicate decisions regarding his person" and his estate.[3] (Id.)

In an Order filed on January 3, 2012, this Court ordered Plaintiff to show cause why this action should not be dismissed based on his lack of legal capacity to commence this action due to the guardianship. (Id.) On February 6, 2012, Plaintiff, appearing for the first time through counsel, filed a "Motion to Show Cause," which the Court construed as a

---

[2] For appointment of a plenary guardian, the trial court must find the disabled adult is totally without capacity. In re Estate of Fallos, 898 N.E.2d 793, 800 (Ill. Ct. App. 2008). "The probate court, upon petition of a guardian, . . . and after notice to all other persons interested as the court directs, may authorize the guardian to exercise any or all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability." 755 Ill. Comp. Stat. 5/11a-18(a). In addition, "[a]ctions or applications of funds [by a guardian] may include, but shall not be limited to, the following: . . . (2) conveying, releasing, or disclaiming his or her contingent and expectant interests in property . . .; [and] (8) exercising the rights of the ward to elect benefit or payment options, to terminate, to change beneficiaries or ownership, to assign rights, to borrow, or to receive cash value in return for a surrender of rights under any one or more of the following: (i) life insurance policies, plans, or benefits, (ii) annuity policies, plans, or benefits, (iii) mutual fund and other dividend investment plans, (iv) retirement, profit sharing, and employee welfare plans and benefits; . . . . 755 Ill. Comp. Stat. 5/11-18(a-5). Finally, the guardian of the estate of a ward shall appear for and represent the ward **in all legal proceedings** unless another person is appointed for that purpose as guardian or next friend. . . . 755 Ill. Comp. Stat. 5/11a-18(c) (emphasis added).

[3] The Probate Court noted a Physician's Report in support of its determination. "'Incapacitated', when used to describe a principal, means that the principal is under a legal disability as defined in Section 11a-2 of the Probate Act of 1975. A principal shall also be considered incapacitated if: (i) a physician licensed to practice medicine in all of its branches has examined the principal and has determined that the principal lacks decision making capacity; (ii) that physician has made a written record of this determination and has signed the written record within 90 days after the examination; and (iii) the written record has been delivered to the agent. The agent may rely conclusively on the written record." 755 Ill. Comp. Stat. 45/2-3(c-5).

1 Response to the January 3, 2012 Order.[4] (Doc. 42.) On February 9, 2012, the Court ordered
2 Plaintiff to file a memorandum of points and authorities in support of his Response to the
3 show cause order. (Doc. 48.)

4 Through counsel, Plaintiff filed a memorandum in response to the February 9, 2012
5 Order.[5] (Doc. 58.) In it, Plaintiff states that three years prior to the appointment of a
6 guardian, he executed a "General Durable Power of Attorney Effective Upon Execution"
7 (POA) naming his brother, Leo, as his attorney-in-fact. (Id.) Plaintiff submitted a copy of
8 the POA as exhibit 2 to his memorandum, which reflects that it was signed and notarized by
9 a Maricopa County notary on October 24, 2007. (Id., ex. 2.) In the POA, Plaintiff delegated
10 to Leo full power and authority to manage and conduct all of Plaintiff's affairs and to
11 exercise Plaintiff's legal rights and powers, including among others, those: to collect, hold,
12 maintain, improve, invest, lease or otherwise manage any or all of his real or personal
13 property or any interest therein; to purchase, sell, mortgage, grant options, or otherwise deal
14 in any way in any real or personal property; to engage in any administrative or legal
15 proceedings or lawsuits in connection with any matter covered by the POA; to engage and
16 dismiss agents, counsel, and employees in connection with any matter, upon such terms as
17 Leo, as Plaintiff's agent, determined and to sue on Plaintiff's behalf; and to contravene any

---

[4] Plaintiff's counsel also filed an application to proceed *in forma pauperis* that substantially complied with the requirements for a prisoner to proceed *in forma pauperis*, which was also required by the January 3 Order. (Doc. 37.) Pursuant to the Court's last Order, that application has been held in abeyance pending resolution of the capacity issue. (Doc. 48.)

[5] LRCiv 5.5 provides that electronic filing of documents must be in compliance with the Local Rules and the Administrative Manual. The Administrative Manual provides in part that "The name of the ECF registered user under whose log-in and password the document is submitted must be preceded by a 's/' and typed in the space where the signature would otherwise appear." Adm. Manual at II(C)(1). Plaintiff's counsel has failed to comply with that portion of the Administrative Manual in some of his submissions, see doc. 58. Nevertheless, a registered user log-in and password required to submit documents to the ECF system serve as the registered user's signature for purposes of Rule 11 of the Federal Rules of Civil Procedure and the Local Rules. Id.

1  medical power of attorney Plaintiff executed whether prior or subsequent to the execution
2  of the POA.  (Id.)  Plaintiff argues that under Illinois law the power granted pursuant to the
3  POA governs or controls any subsequent power conferred on the later-appointed guardian,
4  citing 755 Ill. Comp. Stat. 5/11a-17(c) and 5/11a-18(e).

5        The Illinois Power of Attorney Act "... governs every agency, whenever and wherever
6  executed, and all acts of the agent to the extent the provisions of this Act are not inconsistent
7  with the agency"[6] and "... applies to all agencies exercised in Illinois and to all other agencies
8  if the principal is a resident of Illinois at the time the agency is signed or at the time of
9  exercise or if the agency indicates that Illinois law is to apply." 755 Ill. Comp. Stat. 45/2-
10  4(b). Otherwise, "[u]nless the agency states an earlier termination date, the agency continues
11  until the death of the principal, notwithstanding any lapse of time, the principal's disability
12  or incapacity or appointment of a guardian for the principal after the agency is signed." 755
13  Ill. Comp. Stat. 45/2-5. Further,

> Absent court order pursuant to the Illinois Power of Attorney Act directing a guardian to exercise powers of the principal under an agency that survives disability, *the guardian has no power, duty, or liability with respect to any personal or health care matters covered by the agency*. This subsection (c) applies to all agencies, whenever and wherever executed.

755 Ill. Comp. Stat. 5/11a-17(c) (emphasis added).  In addition,

> Absent court order pursuant to the Illinois Power of Attorney Act directing a guardian to exercise powers of the principal under an agency that survives disability, *the guardian will have no power, duty or liability with respect to any property subject to the agency*. This subsection (e) applies to all agencies, whenever and wherever executed.

755 Ill. Comp. Stat. 5/11a-18(e) (emphasis added).

---

[6] "'Agency' means the written power of attorney or other instrument of agency governing the relationship between the principal and agent or the relationship, itself, as appropriate to the context, and includes agencies dealing with personal or health care as well as property. An agency is subject to this Act to the extent it may be controlled by the principal, excluding agencies and powers for the benefit of the agent." 755 Ill. Comp. Stat. 45/2-3(a).  "'Principal' means an individual (including, without limitation, an individual acting as trustee, representative or other fiduciary) who signs a power of attorney or other instrument of agency granting powers to an agent." 755 Ill. Comp. Stat. 45/2-3(e).

The POA does not state a termination date or that Illinois law applies, and Plaintiff appears to have been an Arizona resident at the time he executed the POA.[7] Nevertheless, Plaintiff's counsel represents that Plaintiff is currently an Illinois resident. (Doc. 58, at ¶ 3.) Because Plaintiff executed a durable POA prior to the guardianship, absent a court order pursuant to the Illinois Power of Attorney Act, Plaintiff's plenary guardian has no power, duty, or liability with respect to any personal or health care matters covered by the agency or with respect to any property subject to the agency. Thus, it appears that Plaintiff's plenary guardian has no power, duty, or liability with respect to Plaintiff's claims in this case, which concern alleged interests in real property. That does not establish, however, that Plaintiff had or has the legal capacity to litigate this case, *pro se*, or through counsel. Instead, it appears that power belonged and belongs to Plaintiff's agent, Leo Stoller.

Plaintiff claims in the memorandum that:

> Pursuant to the powers as Agent granted to Leo Stoller in the durable Power of Attorney and acting for the benefit of the Principal, *Leo Stoller* commenced this action on behalf of the Principal [pursuant to the terms of the POA].

(Doc. 58 at ¶ 5) (emphasis added). This assertion is belied by the record in this case. The

---

[7] The POA was executed in Arizona in 2007. Plaintiff had an initial appearance on criminal charges in Maricopa County Superior Court, case# CR2008124797, on May 22, 2008. See http://www.courtminutes.maricopa.gov/docs/ Criminal/062008/ m3222725.pdf (last visited Mar. 15, 2012). Plaintiff subsequently pleaded guilty to disorderly conduct and was sentenced to a year in prison less pretrial credit. See http://www.courtminutes. maricopa.gov/docs/Criminal/072009/m3807752.pdf (last visited Mar. 15, 2012). At sentencing, the court recommended that Plaintiff be placed in a facility where he would "receive appropriate treatment for his mental health issues, specifically, he had been diagnosed as seriously mentally ill." Id. Plaintiff was incarcerated in Arizona Department of Corrections (ADC) between July and late November 2009. See http://www.azcorrections. gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=244539&LastName =STOLLER&FNMI=C&SearchType=SearchInet (last visited Mar. 15, 2012). Plaintiff was then transferred to Lake County, Illinois, pursuant to a detainer regarding charges pending against him there. Id. Plaintiff was sentenced to probation for theft in Maricopa County Superior Court case# CR2009-006914. See http://www.courtminutes.maricopa.gov/docs/ Criminal/072009/m3807758.pdf (last visited Mar. 15, 2012).

Complaint and everything filed in this case to date have been signed by Plaintiff, or later, Plaintiff's attorney. Contrary to Plaintiff's statements in the memorandum, *Plaintiff* filed this action, *pro se*, not his brother (and agent).[8] Plaintiff also claims that

> Regardless of the ward's capacity to bring this suit on its [sic] own, due to the powers vested in the Agent through the power of attorney, Leo Stoller has the capacity to maintain this cause of action and does so acting on behalf of the Principal, Christopher Stoller.

(Doc. 58 at ¶ 6). While Leo Stoller has the power as Plaintiff's agent to commence and litigate an action on Plaintiff's behalf, Leo Stoller has not done so in this case. Further, while Plaintiff asserts that his agent endorses the bringing of this action, Plaintiff's attorney does not claim to represent Leo, nor has Leo otherwise appeared.

Plaintiff has *not* demonstrated that he had or has the legal capacity to litigate this action and Plaintiff's agent has not appeared in this action. The Court accordingly finds that Plaintiff has failed to show that he possessed or possesses the legal capacity to litigate this case. Accordingly, the Complaint and this action will be dismissed.

**IT IS ORDERED**:

(1) The Complaint and this action are **dismissed**.

(2) Plaintiff's pending motions are **denied**. (Doc. 37, 59.)

(3) The Clerk must enter judgment of dismissal.

(4) The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 26th day of March, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge

---

[8] Further, Leo Stoller could only appear in federal court in a representative capacity, i.e., Plaintiff's agent, through counsel.